2009 VT 13

In re KEYSTONE DEVELOPMENT CORPORATION

[973 A.2d 1179]

No. 08-125

¶ 1. January 22, 2009. In August of 2006, pursuant to an agreement with the City of Burlington, Keystone Development Corporation provided notice to the City of its intention to excavate a drainage ditch and harvest trees on a property Keystone owns in the City. The City's zoning administrator informed Keystone, via two administrative notices, that the work required a zoning permit. Keystone did not seek a permit, but instead appealed to the Burlington Development Review Board, and later to the Environmental Court. Both tribunals affirmed, and Keystone lodged this appeal. We deem the appeal moot, and dismiss.

¶ 2. We first consider whether the appeal has been rendered moot by the amendment, in January 2008, of the Burlington zoning ordinance. That amendment prohibits, with certain exceptions not relevant here, agricultural and silvicultural activities in the zone where the subject parcel is located. Keystone contends that it has a vested right to the application of the pre-amendment ordinance, which it claims did allow such activities. Keystone argues that its right to the application of that ordinance vested when it was enjoined from performing the work, even though it never applied for a permit to dig ditches or cut trees.

¶ 3. First, Keystone cites *Preseault v. Wheel*, 132 Vt. 247, 252-55, 315 A.2d 244, 247-48 (1974) (*Preseault I*), for the proposition that "rights under [an] ordinance vest when the activity is involuntarily obstructed by legal opposition." The decisive difference between *Preseault I* and the instant case, however, is that the putative developer in *Preseault I* had been issued a building permit prior to the amendments. *Id.* at 253, 315 A.2d at 247. The issue in *Preseault I* was whether a developer with a limited-duration permit who had been prevented by litigation from timely construction retained a vested right to the ordinance in place when the permit was issued. Our holding was a narrow one:

[W]here a valid permit is issued for a specified period, and where actual construction is delayed by litigation . . . a permittee otherwise proceeding in good faith is entitled to reissuance of that permit, even where the zoning was meanwhile changed so that the project is nonconforming.

*Id.* Here, by contrast, Keystone has never applied for or received a permit to cut trees or dig ditches, and our holding in *Preseault I* is therefore not on point.

¶ 4. The second case Keystone cites is inapposite for the same reason. See *In re Preseault*, 132 Vt. 471, 473-74, 321 A.2d 65, 66 (1974) (*Preseault II*). In *Preseault II*, neighboring landowners sought to block reissuance of a building permit that had been issued *before* amendments had rendered the project nonconforming. We concluded that 1 V.S.A. § 213, which generally provides that legislative enactments do not affect suits begun or pending at the time of passage, operated to give the developer a vested right to the permit issued under the pre-amendment ordinance. *Id.* To the extent that the dicta in *Preseault II* can be construed as extending the vested-rights doctrine, we

take this opportunity to clarify that it did not. *Preseault II* stands only for the proposition that an intervening change in regulations will not strip a putative developer of the vested right to a permit that was *actually* approved under prior regulations. Thus, *Preseault II* is not helpful to Keystone.

¶ 5. Finally, Keystone relies on *Smith v. Winhall Planning Commission*, 140 Vt. 178, 182, 436 A.2d 760, 761-62 (1981). *Smith*, however, is contrary to Keystone's position here. In *Smith*, we adopted the rule that a permit applicant gains a vested right in the governing regulations in existence when a full and complete permit application is filed. *Id.* As noted above, Keystone has filed no application here. Instead, it appears that Keystone simply alerted the City — by letter or electronic mail — of its intention to perform tree-cutting and ditch-digging work on the subject property.* The City responded to Keystone's correspondence via two administrative determination letters, which stated that the proposed work, in the zoning administrator's view, required a zoning permit.

¶ 6. The position we adopted in *Smith* was the minority rule; under the majority rule, rights vest only if an applicant has both received a permit and substantially relied on it in commencing work, or can show that an amendment was enacted to target its development. *Id.* at 181, 436 A.2d at 761. The minority rule we adopted in *Smith* allows an earlier and more certain vesting of rights than the majority rule we rejected. The majority view highlights just how radical a departure Keystone would have us make. The rubric Keystone advances would create tremendous uncertainty as to the time and duration of vesting, and as to the scope of the

vested rights. Absent a proper application, it would be difficult to state with certainty what rights, exactly, had vested as to a particular party, or when. These difficulties are particularly evident here, where Keystone claims that its rights vested, in part, by virtue of electronic correspondence that does not appear in the record on appeal. Indeed, one of the City's Notices of Determination states that Keystone's correspondence lacked detail concerning "the scope of the work, methods and equipment to be used, duration and, if any, post-harvesting plans." This Court, like the Environmental Court, the Development Review Board, and the zoning administrator, does not know with any precision what Keystone proposes to do on the subject property, when it proposes to do it, or for how long. We do not construe *Smith* and *Preseault I* and *II* to vest rights upon the mere suggestion to the City that a property owner would like to undertake ill-defined work at an unspecified time. See *In re Ross*, 151 Vt. 54, 56, 557 A.2d 490, 491 (1989) (noting that *Smith* should not be construed "as an open-ended right to 'freeze' the applicable regulatory requirements by proposing a development with inadequate specificity").

¶ 7. We conclude, therefore, that Keystone does not have a vested right to the application of the pre-amendment zoning ordinance to its request to perform tree-cutting and ditch-digging work. Having so concluded, it takes no prolonged analysis to conclude that this appeal is moot. See *Winton v. Johnson & Dix Fuel Corp.*, 147 Vt. 236, 239, 515 A.2d 371, 373 (1986) ("An issue can be made moot by a change in the law as well as by a change in the facts."). Any opinion concerning the application of the no-longer-operative zoning ordinance would not resolve a live controversy, and would therefore exceed our jurisdiction. *Houston v. Town of Waitsfield*, 2007 VT 135, ¶ 5, 183 Vt. 543, 944 A.2d 260 (mem.) ("The mootness doctrine

---

* The original correspondence from Keystone to the City is not in the record, although the City's responsive Notices of Determination are.

derives its force from the Vermont Constitution, which, like its federal counterpart, limits the authority of the courts to the determination of actual, live controversies between adverse litigants." (quotation omitted)). Similarly, because no zoning permit application has been filed under the 2008 ordinance, any ruling on that ordinance's application to such a permit request would be a mere advisory opinion, which we lack the authority to render. *Chase v. State*, 2008 VT 107, ¶ 13, 184 Vt. 430, 966 A.2d 139.

*The appeal is dismissed as moot.*

Motion for reargument denied April 21, 2009.