STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT | ENVIRONMENTAL DIVISION |
| | Docket No. 126-10-19 Vtec |
| Duval CU Denial | DECISION ON MOTION |

Peter K. Duval (Applicant) appeals the Town of Underhill Development Review Board's (DRB) denial of a conditional use application for the conversion of an existing single-family home with an attached accessory dwelling into a 4-unit multi-family dwelling located at 25 Pine Ridge Road in Underhill, Vermont (the Property). The Town of Underhill (Town) subsequently cross-appealed. Presently before the Court Is the Town's motion for summary judgment on Questions 1 and 2 of their Statement of Questions, pursuant to V.R.C.P. 56(b).

Town is represented by Joseph S. Mclean, Esq. Applicant is self-represented.

**Legal Standard**

To prevail on a motion for summary judgment, the moving party must demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a), applicable here through V.R.E.C.P. 5(a)(2). When considering a motion for summary judgment, the nonmoving party receives the benefit of all reasonable doubts and inferences. Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356. Once the moving party meets the initial burden of showing that no material facts are disputed, the burden shifts to the non-moving party to establish a triable issue of fact. Pierce v. Riggs, 149 Vt. 136, 138 (1987). In determining whether there is any dispute over a material fact, "we accept as true allegations made in opposition to the motion for summary judgment, so long as they are supported by affidavits or other evidentiary material." White v. Quechee Lakes Landowners' Ass'n, Inc., 170 Vt. 25, 28 (1999) (citation omitted); V.R.C.P. 56(c)(1)(A).

**Findings of Fact**

We recite the following facts solely for the purpose of deciding the pending motion for summary judgment. These facts do not constitute factual findings, as factual findings cannot occur until after the Court conducts a trial. Fritzeen v. Trudell Consulting Eng'rs, Inc., 170 Vt. 632, 633 (2000) (mem.).

1. The ZA approved a single-family building with an accessory dwelling on July 28, 2004, located at 25 Pine Ridge Road in Underhill, Vermont (the Property). The Property is located within the Town of Underhill's Water Conservation Zoning District.

2. The Town of Underhill Development review process requires applications for site plan or conditional use review must be submitted to the ZA and include supporting documentation identified in application checklists or as specified by the ZA, pursuant to § 5.2(A) of the 2014 Underhill Unified Land Use & Development Regulations (2014 UDLR).

3. The Underhill Planning Commission (PC) held meetings and hearings on proposed amendments to the 2014 UDLR, on October 5, 7, 12, 19 and November 2, 2017. These hearings addressed, in part, amendments that eliminated multi-dwelling use in the Water Conservation District. Applicant attended all hearings except the October 12, 2017, hearing. Applicant actively participated in these hearings and expressed opposition to the amendments.

4. On October 27, 2017, the ZA sent Applicant information on a proposed zoning bylaw amendment concerning multi-family dwellings.

5. On November 2, 2017, the PC formally voted to zoning bylaw amendments to the 2014 UDLR, which eliminated multi-family dwelling use in the Water Conservation District, to the Town of Underhill Selectboard (Selectboard) for a public hearing. The vote was public and Applicant was in attendance.

6. On November 2, 2017, Applicant filed an application for conditional use approval to convert an existing single-family residential building with an attached accessory dwelling not a 4-unit multi-family dwelling on the Property. The application included a conditional use/site plan review application, an application fee of $ 150.00, conditional review standards findings checklist, and a site plan illustrating existing conditions.

7. On November 2, 2017, the Town of Underhill Zoning Administrator (ZA) scheduled a DRB hearing for December 4, 2017.

8. On November 8, 2017, the ZA emailed Applicant requesting additional application materials to assist DRB review. Applicant responded to the ZA, stating that additional materials would be submitted by November 13, 2017.

9. The Selectboard published notice of public hearings to be held on December 5 and 12, 2017, regarding proposed amendments to the 2014 UDLR in the Burlington Free Press on November 11, 2017.

10. On November 13, 2017, Applicant submitted a site plan to the ZA illustrating the proposed project. On November 14, 2017, Applicant submitted updated materials including a concept floor plan, a maintenance plan, a project brief, a new site plan illustrating existing conditions, and a new site plan showing the proposed project.

11. On November 14, 2017, the ZA emailed Applicant requesting more information and advised Applicant that failure to provide all requested information by November 15, 2017 would result in a rescheduled hearing. The ZA sent a second email to Applicant requesting Applicant respond later that afternoon.

12. On Wednesday November 15, the ZA informed Applicant that a conditional use application hearing had been set for December 4, 2017. This hearing was continued twice, on December 4, 2017 and February 7, 2019, upon Applicant's request.

13. On November 18, 2017, the Burlington Free Press published the public hearing notice of the conditional use review hearing to be held on December 4, 2017.

14. On December 5, 2017, the Selectboard held a public hearing on the proposed zoning bylaws amendment. Applicant attended and expressed opposition to the amendments.

15. In January 2018, the Selectboard adopted the proposed amendments to the 2014 ULDR, effective March 6, 2018 (2018 ULDR). The 2018 ULDR prohibits multi-family dwellings in the Water Conservation Zoning District.

16. On February 15, 2018, the ZA sent a letter to the Applicant that included a detailed list of outstanding application materials needed for the DRB to conduct a sufficient review.

17. Applicant's conditional use application hearing occurred on May 7, 2018.

18. On July 29, 2018, the DRB denied Applicant's application for conditional use approval and denied reconsideration on August 6, 2018. Applicant subsequently appealed to this Court.

19. This Court granted the Town's motion to remand Applicant's initial appeal to the DRB for further review of the wastewater system design. This Court permitted Applicant 60 days to obtain a wastewater system and potable water supply permit and submit the required information to the DRB. The 60-day period ended on July 19, 2019.

20. Applicant submitted the required information on July 19, 2019. The submission included a cut-off and unreadable critical plan sheet. On July 22, 2019, Applicant submitted an updated critical plan sheet.

21. On September 27, 2019, the DRB denied Applicant's conditional use application.

22. Applicant timely appealed that decision to this Court on October 27, 2019.

## Discussion

The Town moves for summary judgment on Questions 1 and 2 of their Statement of Questions, which address the vested rights doctrine and the pending ordinance doctrine. Cross-Appellant Town of Underhill's Motion for Summary Judgment at 10–19, filed Jan 2, 2020 [hereinafter Town's Motion for Summary Judgment]. Question 1 asks whether 24 V.S.A. § 4449(d) requires this Court to apply the 2018 ULDR in contrast to the 2014 ULDR when Applicant failed to submit a complete application until after the Selectboard's first public notice. Id. at 10. Question 2 addresses whether, if the 2018 ULDR is applied, the application should be denied pursuant to 2018 ULDR as it includes a multi-family use in the Water Conservation Zoning District. Id. at 18. Applicant opposes, stating that the 2014 ULDR is applicable. Applicant-Appellant's Memorandum in opposition to Town's Motion for Summary Judgment at 1, filed Feb. 10, 2020.

As a preliminary matter, we note that when parties are self-represented, the Court is careful to ensure self-represented litigants are not "taken advantage of by strict application of the rules of procedure." Town of Washington v. Emmons, 2007 VT 22, ¶ 7, 181 Vt. 586 (mem.). Although we afford self-represented litigants greater flexibility, "[t]his does not mean that [they] are not bound by the ordinary rules of civil procedure." Vahlteich v. Knott, 139 Vt. 588, 590–91 (1981); In re Waitsfield Public Water System Act 250 Permit, No. 33-2-10 Vtec, slip op. at 2 (Vt.

4

Super. Ct. Envtl. Div. Sep. 15, 2010) (Durkin, J.) (noting that the "duty the courts owe to self-represented litigants does not extend to representation or advocacy").

## I.     Whether the 2014 ULDR Vested.

Vermont follows the minority rule for vested rights, which "create a bright line, allowing identification of when rights vested without having to consider the extent to which the landowner has made investments and taken actions in reliance on the permit."[1]  In re Taft Corners Assocs., Inc., 171 Vt. 135, 142 (2000).  Under the minority rule, "a permit applicant gains a vested right in the governing regulations in existence when a *full and complete* permit application is filed."  Smith v. Winhall Planning Comm'n, 140 Vt. 178, 180 (1981) (emphasis added); In re Shatney Home Occupation Denial, No. 43-4-16 Vtec, slip op. at 3 (Vt. Super. Ct. Envtl. Div. Oct. 27, 2016) (Walsh, J.) (citing In re Times and Seasons, LLC, 211 VT. 76 ¶ 12, 190 Vt. 163)).  Generally, "an intervening change in regulations will not strip a putative developer of the vested right to a permit that was actually approved under prior regulations."  In re Keystone Development Corp., 186 Vt. 523, 524 (2009) (citing In re Preseault, 132 Vt. 471, 473–74 (1974)).

This rule is subject to a limited exception: the pending ordinance doctrine.  This doctrine governs "where a zoning change is pending at the time of an application."  In re Handy, 171 Vt. 336, 350, (2000).  Thus, "even though zoning amendments are effective on the date of adoption, . . . a developer may not have a vested right in an application filed while a proposed amendment is pending."  Id.  Indeed, 24 V.S.A. § 4449(d) allows for this very mechanism, stating that an administrative officer, for a period of 150 days following public notice for a first public hearing for the amendment of a bylaw, "shall review any new application filed after the date of the notice under the proposed bylaw or amendment . . . ."  The purpose of the pending ordinance doctrine is to facilitate and encourage amending of town bylaws "without the threat of landowners racing to 'beat the clock' by filing an application and thus obtaining vested rights under existing regulations."  In re John A. Russell Corp., 2003 VT 93, 94 n.2, 176 Vt. 520; In re Ross, 151 Vt. 54, 56 (1989) (indicating that applicants should be inhibited from "open-ended right[s] to 'freeze'

---

[1]  The purpose of this rule is to ensures "the orderly governance of development and . . . reasonable reliance on the process."  In re Taft Corners Assocs., Inc., 160 Vt. 583, 593 (1993); (citing Levy v. Town of St. Albans Zoning Bd. of Adjustment, 152 Vt. 139, 143, 564 A.2d 1361, 1364 (1989).

5

the applicable regulatory requirements by proposing a development with inadequate specificity" while amendments are pending).

This doctrine requires that an applicant "submit a 'proper application' before acquiring a vested right." In re Jolley Assocs., 2006 VT 132, ¶ 11, 181 Vt. 190 (citing Ross, 151 Vt. at 57)). An applicant's vested rights arise from "proceedings validly brought and pursued in good faith to implement rights available under previous law." Preseault, 132 Vt. at 474. The good faith standard requires a showing by the applicant that "it did not engage in a rush to file its application by 'submitting a general and sketchy . . . application solely to protect itself against an amendment . . .'" In re Rivers Development, LLC, Nos. 7-1-05 Vtec and 68-3-07 Vtec, slip op. at 7 (Vt. Envtl. Ct. Jan. 8, 2008) (Durkin, J.) (citing Taft Comers, 171 Vt. at 142). In analyzing good faith, the Court looks to the timing of the application and applicant's knowledge of the planned amendments. Id.; see also In re Ross, 151 Vt. 54, 56 (1989) (looking to the applicant's knowledge).

The Town argues the earliest Applicant submitted a "complete and proper" application was July 19, 2019, after this Court remanded and ordered Applicant to submit wastewater design details. We Agree. Pursuant to § 5.2 (A)(1)(e) of the ULDR, a complete and proper application for conditional use review requires "other information or supporting documentation identified from application checklists, or as specified by the [ZA] . . . ." The ZA requested additional information from Applicant on November 8[2] and 14, 2018.[3] The ZA and DRB again requested and extensive list of necessary materials to be submitted on February 15, 2018.[4] Moreover, the DRB noted it was not equipped with sufficient factual evidence to render a complete initial

---

[2] On November 8, 2018, the ZA requested: a site plan showing the driveway layout and parking layout; concept floor plans illustrating the different dwelling units; and a narrative explaining the meaning of multi-generational/flexible housing units.

[3] On November 14, 2018, the ZA requested: a site plan showing parking layout; a narrative describing trash removal, snow removal, and other types of maintenance; and a narrative explaining the meaning of multi-generational/flexible housing units.

[4] On February 15, 2018 the ZA and the DRB requested in the Board's memorandum the following materials: information on issues of site circulation and site plans, identification of areas of steep and very steep slope, erosion control techniques for during and after construction, stormwater management techniques and design, septic system depiction, identification of proposed building footprint with boundaries of each dwelling unit, landscaping and screening techniques and locations depicted on the site plan, the building's massing, a traffic impact statement, information on the adequacy of the water supply, a project phasing plan, and any waivers or variances requested.

decision on June 28, 2018.[5] On appeal, this Court recognized the application was incomplete and remanded to the DRB to allow additional information to be submitted and reviewed. Duval CU Denial, No. 93-8-18 Vtec, slip op. at 2 (Vt. Super. Ct. Envtl. Div. May. 22, 2019) (Walsh, J.) (stating that Applicant had failed to submit a wastewater system permit to the Agency of Natural Resources).

Indeed, the DRB was not equipped with a complete application to review until its September 27, 2019 decision. See In re: Peter Duval, No. DRB-17-16, slip op. at 10 (Underhill Dev. Rev. Bd. Sept. 27, 2020) ("With the submission of the wastewater design . . . the Board finds that the application is more or less complete, as the necessary materials have been submitted . . . ."). This record clearly illustrates the application was not sufficiently "complete" for purposes of establishing vested rights until July 19, 2019, as the DRB was unable to conduct a full and complete decision until the wastewater system designs were submitted. Ross, 151 Vt. at 57 (noting that failure to "supply sufficient information to enable the [administrative body] to render a decision" elevates form over substance).

The bright line rule articulated in 24 V.S.A. § 4449(d) acts as a "moratorium for applications filed while a bylaw is pending." Rivers Development, LLC, Nos. 7-1-05 Vtec and 68-3-07 Vtec at 8 (Jan. 28, 2008); Town of Westford v. Pelkey, Nos. 69-6-17 Vtec and 167-12-17 Vtec, slip op. at 9 (Vt. Super. Ct. Envtl. Div. Jul. 25, 2019) (Durkin, J.). For a bylaw to be pending, there must first be duly provided public notice. Id. at 9. Here, Applicant submitted a complete application on July 19, 2019 and the Selectboard issued its notice of public hearing for the purpose of discussing proposed amendments to the 2014 ULDR in the Burlington Free Press on November 11, 2017. Thus, because the public notice was issued more than 150 days prior to the filing of Applicant's complete application, there is no vested right under the 2014 UDLR and the 2018 ULDR applies.

---

[5] In its decision, the DRB noted that it could not render decisions on regulations pertaining to source protection areas, steep slopes, surface waters and wetlands, and water supply and wastewater systems because Applicant had not demonstrated an ability to attain a wastewater system and potable water supply permit from the Agency of Natural Resources. In re: Peter Duval, No. DRB-17-16, slip op. at 10 (Underhill Dev. Rev. Bd. Jun. 28, 2018).

Based upon the above reasoning, we **GRANT** the Town's motion for summary judgment on Question 1 of their Statement of Questions.

**II.     Whether the Application should be denied under the 2018 ULDR.**

The 2018 ULDR includes amended provisions effectively prohibiting multi-family dwelling uses in the Water Conservation District. Specifically, 2018 ULDR § 2.3(C) prohibits uses not listed within zoning districts and Art. II Table 2.5(B) addressing the Water Conservation District does not list multi-family uses. As Applicant's Property is located within the Water Conservation District and the application seeks a multi-family conditional use, the application fails to comply with the 2018 UDLR. We therefore **GRANT** the Town's motion for summary judgment on Question 2 of their Statement of Questions.

<u>Conclusions</u>

For the foregoing reasons, we conclude Applicant's rights to have his application reviewed under the 2014 ULDR did not vest and the application is denied pursuant to the 2018 ULDR's prohibition on multi-family uses in the Water Conservation District. We therefore **GRANT** the Town's motion for summary judgment and **UPHOLD** the DRB's denial of Applicant's conditional use application for the reasons set forth above.

This concludes the matter before the Court. A Judgment Order accompanies this Decision.

Electronically signed on June 30, 2020 at 10:25 AM pursuant to V.R.E.F. 7(d).

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division