STATE OF VERMONT
ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| In re: Remy Subdivision Alteration | } | Docket No. 21-1-08 Vtec |

## Decision and Order on Pending Motions

This appeal arises out of an interpretation of a condition to Appellant-Applicant John Remy's pre-existing subdivision permit by the Development Review Board ("DRB") of the Town of Williston ("Town"). The DRB determined that a condition of Mr. Remy's 2006 subdivision permit limiting the square footage of above-grade structures built on the subdivided lots included the square footage of garages built on the lots.

Appellant Remy is represented by Carl H. Lisman, Esq. and Adam P. Bergeron, Esq. The Town is represented by Paul S. Gillies, Esq.

Both Appellant and the Town have moved for summary judgment on all questions in Appellant's Statement of Questions. In addition, the Town asserts that the Court lacks subject matter jurisdiction to consider this appeal.

## Factual Background

For the purposes of these motions alone, the following facts are considered undisputed unless otherwise noted.

1. In 2002, Appellant applied for a subdivision permit. The DRB denied Appellant's application for a preliminary phasing allocation.

2. Appellant appealed that denial to this Court. The Court held that Appellant was entitled to a preliminary phasing allocation and remanded the matter so the DRB could conduct further review, preliminary phasing allocation, and subdivision ranking. Appeal of Remy, Docket No. 93-6-03 Vtec (Vt. Envtl. Ct. Apr. 12, 2004) (Wright, J.).

3. One year after the remand, the DRB approved Appellant's preliminary subdivision plans with eight conditions. See Ex. B at 8 (containing a copy of the April 12, 2005 Town of Williston DRB minutes). This approval allowed Appellant to continue forward to the final stage of subdivision review.

4. The seventh condition, which the parties aptly label Condition 7, stated that "[t]he 3-bedroom houses are to be between 2,000 and 2,400 Square Feet in floor area above grade[,] and

the 4-bedroom houses are to be between 2,400 and 3,000 Square Feet in area above grade, to be in keeping with the historic district." Ex. B. at 8.

5. Appellant secured final approval of his subdivision plans on January 24, 2006. See Ex. 4 (containing a copy of a memorandum announcing the DRB's decision regarding Appellant's subdivision application, numbered SUB-03-08) ("2006 DRB Decision"). The January 24, 2006 DRB meeting minutes served as Appellant's "official approval."[1]

6. Neither Appellant nor the Town appealed the January 24, 2006 decision.

7. Appellant's subdivision was approved "with house sizes varying as approved in the Preliminary Subdivision approval of April 12, 2005," subject to additional conditions. Id.

8. On October 22, 2007, Eugene J. Ward, III, Esq., wrote to D.K. Johnson, the Town Zoning Administrator, to express concern regarding Mr. Johnson's interpretation of Condition 7. Ex. 5. Attorney Ward had apparently recently learned that Mr. Johnson believed that Condition 7's square footage limitations included square footage in garages. Ex. 1.

9. Attorney Ward asserted in his letter that Mr. Johnson's interpretation of Condition 7 caused a potential buyer to cancel a contract to purchase Appellant's project. Ex. 5; see also Appellant's Statement of Undisputed Facts at ¶4. Appellant explains these circumstances as follows:

> The . . . buyer applied to the Town of Williston's Zoning Administrator for a building permit in accordance with the square footage limitations of Condition #7 (3-bedroom houses between 2,000 and 2,400 square feet and 4-bedroom houses between 2,400 and 3,000 square feet). However, the Zoning Administrator denied the permit on the basis that the square footage limitations imposed by Condition #7 *include* the square footage of garage areas.

Applicant's Statement of Material Facts at ¶ 4 (emphasis in original).

10. The Town does not dispute Appellant's assertion regarding this permit denial. We have no evidence before us that this building permit denial by the Zoning Administrator was ever appealed to the DRB by any party who had received notice of the application.

11. In his October 22, 2007 letter, Mr. Ward requested that the Zoning Administrator present to the DRB his concerns regarding the interpretation of Condition 7 "as soon as possible" and separately requested to "hear from Town counsel as soon as possible." Ex. 5. At the time of Mr.

---

[1] The Town's Exhibit 4 contains the memorandum announcing the decision as well as partial copy of the January 26, 2006 meeting minutes. Exhibit 4's version of the minutes is partly illegible. The same minutes, albeit in a different form, have been fully and legibly reproduced in Appellant's Exhibit A.

Ward's request, no specific application for development approval was pending before the Zoning Administrator or the DRB.

12. The DRB held a public hearing on January 8, 2008, during which three other subdivision applications were noticed for hearing before the DRB. Ex. 2. Attorney Ward's request for DRB clarification on how square footage should be measured under the 2006 Remy Permit was not noticed for the January 8th Public Hearing. Id. Rather, under the meeting agenda item titled "Other Business and Correspondence" was the following: "• Decision Item – Define S.F. Measurement for Houses in Slate Barn Estates, SUB—03-08."

13. Under the "Other Business" section of their January 8th meeting, the DRB took up the general question of how to interpret "the DRB motion" as it pertained to the question of whether garages should be included in the computation of square footage. Ex. 2 at 6. We understand the reference to "DRB motion" to be the original motion to approve the Remy subdivision at the DRB hearing on January 24, 2006. See Ex. A at 10.

14. On recommendation of the Town attorney, Mr. Gillies, a motion was made at the January 8, 2008 meeting as follows: "that the [DRB's] intention for [Condition 7, as approved by the DRB at its January 24, 2006 Public Hearing, was for] the square footage for above grade space [to] include[] garages." Id. at 9.[2]

15. The minutes of the January 8, 2008 DRB meeting serve as the DRB's decision, as is permissible by statute. 24 V.S.A. § 4464(b)(1). No party has provided any other notice of the DRB decision that would indicate otherwise.

16. On January 30, 2008, Appellant appealed the DRB's action to this Court.

### Discussion

Appellant has submitted five questions in his Statement of Questions, and each either asks whether the DRB had the authority to make this interpretation or asks whether this interpretation is in violation of the Interim Unified Development Bylaw for the Town of Williston, adopted November 19, 2007 ("Interim Bylaw"). See Ex. 3 (containing a copy of the Interim Bylaw). Both parties have moved for summary judgment. The Town's summary judgment motion includes a request that the Court summarily dismiss the pending appeal for want of subject matter jurisdiction in this Court. The Town asserts that the DRB's motion to

---

[2] The DRB appears to have chosen to interpret Condition 7 in this manner instead of requiring Appellant to follow an alternate suggestion: to submit a new application to amend its existing subdivision permit, so as to provide a clarification of how square footage was to be counted. See Ex. 2 at 6.

accept the interpretation of Condition 7 that includes garages within the square footage limitation was not the type of act or decision over which this Court has cognizance. We address these issues in turn.

Four of Applicant's five Questions in his Statement of Questions inquire about whether the DRB's "amendment" to Condition 7 was permissible. Question 2 asks whether Applicant's interpretation of Condition 7 (i.e.: garages should not be included in a computation of square footage) was deemed approved for failure of the DRB to render a timely decision pursuant to Town of Williston Subdivision Regulations ("Subdivision Regulations") § 860. See Applicant Exhibit H (containing a selection from the Subdivision Regulations). None of Applicant's Questions specifically inquire about the proper construction or interpretation[3] of Condition 7; they only inquire about the propriety of the DRB's decision, not whether it was correct. We will begin with the deemed approval question.

In its relevant part, Subdivision Regulations § 860 provides that "[t]he DRB shall, within forty-five (45) days after the completion of the public hearing, or any continuation thereof, approve, modify and approve or disapprove such plat[,]" and "[f]ailure to so act within forty-five (45) days shall be deemed approval." Our Supreme Court has directed that the deemed approval remedy should be conservatively applied to situations that clearly fulfill its purpose: to eliminate protracted deliberation, negligent or deliberate inaction, and to remedy indecision. See In re: Miller Conditional Use Application, Docket No. 59-3-07 Vtec, slip op. at 8-9 (Vt. Envtl. Ct. Nov. 5, 2007) (Durkin, J.) (citing In re McEwing Svcs., LLC, 2004 VT 53, ¶ 21, 177 Vt. 38, 46). Applicant asserts that the January 8, 2008 DRB decision contravened § 860 because the action taken at the January 8, 2008 DRB meeting came much more than 45 days after the 2006 DRB Decision, which was given on January 24, 2006, evidently suggesting that Applicant's interpretation of Condition 7 should prevail because of the delay between the 2006 DRB Decision and the more recent DRB action.

We cannot accept Applicant's suggestion. First, § 860 does not speak to delays between a final approval and later clarification or even amendment. Section 860 only addresses delay between a final public hearing and a DRB decision on the then-pending application. To interpret it otherwise would violate our Supreme Court's instruction to interpret the deemed approval

---

[3] We note that, in his final paragraph in support of his summary judgment request, Appellant requests that the Court conclude "that Condition #7 of the final subdivision approval limits house sizes exclusive of garages." Because of the jurisdictional conclusions we reach in this Decision, we do not believe it appropriate to review this request.

- 4 -

doctrine conservatively and only in a manner that remedies protracted deliberation and unjust delay.

Second, the facts of the appeal now before us, with the DRB meeting at which Appellant's request was considered being held on January 8, 2008 and the decision being rendered that same evening, do not justify use of the deemed approval remedy. There was no 46-day delay between the final hearing and decision; the DRB acted on Appellant's request on the same evening that it considered the request. The requested remedy is not applicable to the facts now before us. For these reasons, Applicant's Motion for Summary Judgment on Question 2 is **DENIED**. For the very same reasons, namely that application of the deemed approval doctrine is not appropriate here, the Town is **GRANTED** summary judgment on Appellant's Question 2.

Applicant's remaining Questions ask whether the DRB's action constitutes an impermissible amendment generally or an amendment in contravention of provisions of the Subdivision Regulations or the Interim Bylaw. The Town replies that the decision was not an amendment so much as "an expression of an intention," or a clarification of the 2006 subdivision approval, of which Condition 7 was a part.

Our oft-stated role in a <u>de novo</u> appeal such as this is to apply anew the standards that were applicable before the appealed-from tribunal. See, <u>e.g.</u>, <u>In re: Lake Carmi, LLC Conditional Use Application</u>, Docket Nos. 108-5-07 Vtec and 109-6-07 Vtec, slip op. at 3 (Vt. Envtl. Ct. June 23, 2008) (Durkin, J.) (citing 10 V.S.A. § 8504(h) and V.R.E.C.P. 5(g)). We are generally limited to deciding issues raised in a Statement of Questions, but we are also empowered to decide issues "intrinsic" to the questions in the Statement of Questions. <u>In re Jolley Assocs.</u>, 2006 VT 132, ¶ 9, 181 Vt. 190, 194. While we consider an application anew, our focus remains on the application presented to the appealed-from tribunal, as we exercise only the powers the DRB could exercise, but no more. <u>Simendinger v. City of Barre</u>, 171 Vt. 648, 652 (2001).

The Interim Bylaw empowers the DRB to "[hear] appeals from decisions of the [Zoning] Administrator . . . and [to review and act upon] applications for discretionary permits." Interim Bylaw § 3.3. Thus, the DRB has an appellate function and the original authority to take action on discretionary permit applications.

This appeal has a unique procedural posture. As noted, Appellant's attorney requested that the DRB decide what the proper interpretation of Condition 7 should be, after he had learned of the Zoning Administrator's denial[4] of a prospective buyer's permit application for a house and garage that would, when combined, exceed the Zoning Administrator's interpretation of Condition 7's maximum square footage limitations. There is no evidence before us that an appeal was ever filed with the DRB from a "decision or act take by the administrative officer." 24 V.S.A. § 4465(a) (requiring a notice of appeal be filed with the DRB in order to appeal "any decision or act taken by the administrative officer"). There also is no evidence that Appellant submitted an application to amend the 2006 subdivision permit; we have not been presented with any of the forms required for administrative permit or discretionary permit review. See Interim Bylaws §§ 5.1.3, 6.4.2, 6.4.3 (outlining the ministerial application requirements for permit review).

Without an application to consider and without an appeal filed with the DRB from any Zoning Administrator action, the DRB lacked authority to review or to act upon Appellant's request. To the extent that Appellant's request was seeking clarification of what should be included in the square footage computation required under Condition 7 from the DRB's 2006 approval, we know of no authority for the DRB to entertain such a request. See In re Hildebrand, 2007 VT 5, ¶ 11, 181 Vt. 568, 570 (noting that unappealed subdivision approval conditions become final and cannot be collaterally challenged at a later date, unless an applicant makes a sufficient showing of changed circumstances).

The unique procedural posture of this case, a DRB decision prompted by neither an application nor an appeal from the Zoning Administrator, brings the DRB decision within the ambit of both Hildebrand's and 24 V.S.A. § 4472(d)'s prohibition on collateral challenges to an unappealed municipal panel decision.[5] Regardless of whether this action is labeled as a mere interpretation or even clarification of Condition 7, the intent was to imbue that condition with a more specific meaning and to put the Condition's eventual application to a contest. This is precisely the type of action that undercuts the clear policy of favoring finality that § 4472(d) embodies.

---

[4] We have no evidence before us of the specific nature of this denial (formal or informal), nor any evidence of a timely appeal being filed by a party from that denial.

[5] Of course, nothing in this Decision ought to be understood to limit the ability to enforce the terms of the January 24, 2006 DRB decision through injunction, mandamus, contempt, or otherwise. 24 V.S.A. § 4470(b); and see V.R.E.C.P. 3(8) (placing an action under § 4470(b) in this Court's original jurisdiction).

We also conclude that by entertaining Appellant's request for clarification, the DRB in the first instance, and this Court on appeal in the second instance, would be exceeding its jurisdictional limits by rendering an advisory opinion, something our Supreme Court has repeatedly concluded is improper. See, e.g., In re Appeal of 232511 Invs., Ltd., 2006 VT 27, ¶ 19, 179 Vt. 409, 417 (forbidding adjudication of hypothetical permitting situations that do not present a justiciable controversy). This caution is, in part, a practical one, since rendering a decision on a request that is not based upon an application or a notice of appeal causes the DRB in the first instance and this Court on appeal to rely upon an undeveloped record, without notice or an opportunity for interested persons to be heard. 232511 Invs., 2006 VT 27, ¶ 18.

We therefore conclude that the DRB acted beyond its jurisdictional authority when it entertained Appellant's informal[6] request for clarification of Condition 7. We recognize that the DRB's action was motivated by Appellant's request for a clarification of an existing permit condition, but can find no authority in the enabling statute or applicable municipal regulations for such action. The DRB's action on this request is therefore **VACATED**.

We also specifically reject Appellant's contention that the DRB's action in 2008 was in violation of the deemed approval doctrine and therefore **GRANT** summary judgment to the Town and **DENY** it to Appellant on his Question 2. In light of our determination here, we **DISMISS AS MOOT** all of Appellant's remaining Questions.

This concludes the proceedings in this appeal. A Judgment Order accompanies this decision.

Done at Newfane, Vermont this 31st day of July, 2008.

_____
Thomas S. Durkin, Environmental Judge

---

[6] By "informal" we mean a request not embodied in either an application or notice of appeal.