STATE OF VERMONT

SUPERIOR COURT                                ENVIRONMENTAL DIVISION

|                                            |   |                        |
|--------------------------------------------|---|------------------------|
| In re Chittenden County Fish & Game Club, Inc. | } | |
| (Appeal of Lowe & Smith)                   | } | Docket No. 47-3-11 Vtec |
| (Cross-Appeal of Chittenden County         | } | |
| Fish & Game Club, Inc.)                     | } | |
|                                            | } | |

Decision and Order

Appellants Robert and Elizabeth Lowe and William Smith were either appellants or interested parties in In re Appeal of Smith, No. 263-12-02 Vtec (Vt. Envtl. Ct. Dec. 20, 2004) (Wright, J.), aff'd, 2006 VT 33, 179 Vt. 636.[1] Appellants are represented by Daniel P. O'Rourke, Esq. Appellee-Cross-Appellant Chittenden County Fish & Game Club, Inc. (the Club) is represented by Michael J. Harris, Esq. The Town of Richmond, represented by Mark L. Sperry, Esq. in the previous appeal, has not entered an appearance in the present proceedings. In the present proceedings, Appellants have moved for summary judgment on Questions 1, 2, and 8 of the Statement of Questions, relating to whether the Development Review Board (DRB) of the Town of Richmond had authority to undertake the proceedings and make the decision from which this appeal is taken.

In Appeal of Smith, this Court determined that the use to which the Club was putting its land was either a "private club," a prohibited use in the relevant zoning

---

[1] In late 2004 in that appeal, this Court issued a decision overturning a 2002 decision of the Richmond DRB and the underlying Zoning Administrator's decision. The Zoning Administrator had denied Appellants' request to take enforcement action against the Chittenden County Fish & Game Club (the Club) for having expanded the scope and intensity of a nonconforming use, and the DRB had upheld that decision.

district, or an "outdoor recreation facility," a conditional use in the zoning district. This Court recognized that, if the Club were to be considered under the "private club" use category, the Club was a nonconforming use in the zoning district, regulated under § 4.7 (now § 4.9) of the Richmond Zoning Regulations, which then provided that a nonconforming use may not be increased or expanded beyond a 25% increase in physical characteristics. Section 4.7 allowed an increase of up to 25%, but only if both the nonconforming use itself and the site plan of the facility were approved by the DRB.

As stated in Appeal of Smith, non-conforming uses can continue to exist and be maintained, but the Club does not have an unlimited right to expand the elements of its operation that are prohibited from the zoning district or are restricted to conditional use approval. No. 263-12-02 Vtec, slip op. at 13. The Court explained that "[a] non-conforming use has the right to continue to exist and be maintained as it was when it became non-conforming; it does not hold an unlimited right to expand those elements of its operation (such as noise, lighting, or traffic) that caused the use category to be excluded from the [zoning] district in the first place."

This Court also noted that, if the Club were instead to be considered under the "outdoor recreation facility" use category, a conditional use in the relevant zoning district, any changes to the Club or its use since the adoption of the Zoning Regulations in 1969 should have obtained conditional use approval under § 5.5. Additionally, the Court ruled that, regardless of which of these uses the Club was undertaking on its property, its improvement of the parking area should have obtained site plan review from the DRB, and that the uses needed to conform to the noise performance standards in § 4.8 (now § 4.10).

Also in its 2004 Decision and Order, based on the evidence presented in trial, this Court concluded that the Club had increased the scope and intensity of use of its

2

shooting range to such a degree that review by the DRB was triggered[2] under either § 4.7 or § 5.5. This Court therefore reversed both the Zoning Administrator's letter and the DRB's approval of it, and remanded the matter to the municipal level to enable the parties to initiate any new proceedings they may have wished to take, consistent with the Court's decision.

This reversal and remand allowed Appellants to renew their request for the Zoning Administrator to initiate enforcement action, <u>if they wished to do so</u>. This reversal and remand also allowed the Club, <u>if it wished to do so</u>, to apply to the DRB for approval of the increased scope and intensity of the use, as well as for any necessary site plan approval. That is, the Court's order <u>left it up to the Club to choose whether to apply as an increase to a nonconforming use, or for conditional use approval, or both, or simply to reduce the scope and intensity of use</u> of the shooting range to its 1969 level as described in the Court's decision.

This Court's decision did not require any of the parties to take any action; its remand simply returned jurisdiction of the matter to the municipal level to allow the parties to file further applications or requests if they wished to do so, consistent with the principles of issue preclusion and the Vermont Supreme Court's various rulings as to successive appeals or applications. See, e.g., <u>In re Armitage</u>, 2006 VT 113, ¶¶ 4, 7–10, 181 Vt. 241.

---

[2] The 2004 Decision and Order, affirmed by the Supreme Court, made a finding that, up to at least 2003, the uses of the Club's shooting range had "at least doubled, and may have increased by as much as four or five times, as compared with the amount of shooting that had existed in 1971 and through the 1980s." <u>Appeal of Smith</u>, No. 263-12-02 Vtec, slip op. at 6; see also <u>Appeal of Smith</u>, 2006 VT 33, ¶ 4. The Court did not, of course, determine the use levels at the time of an application to the DRB, because no such application then existed.

On April 24, 2006, the Vermont Supreme Court affirmed this Court's decision. In re Appeal of Smith, 2006 VT 33, 179 Vt. 636. The Supreme Court discussed the law and "the public policy underlying the statutory and regulatory schemes carefully designed to maximize compliance with zoning regulations and to minimize noncompliance and nonconforming uses." Id., ¶ 10. The Supreme Court noted that, on appeal, the Club had not challenged the Environmental Court's findings as to the increase in use of the shooting range over time. Id., ¶ 5. The Supreme Court clearly stated that the Club is "limited to using the structures at their historic levels without a conditional use permit [or other approval from the DRB] authorizing the expansion in use." Id., ¶ 11.

The parties have not suggested that, at any time since 2006, the Club has applied to the DRB for nonconforming use expansion approval, conditional use approval, and/or site plan approval, as allowed by this Court's 2002 decision. Nor do they suggest that the DRB had before it any appeal from a decision of the Zoning Administrator. Rather, on December 8, 2010 and January 12, 2011, which was more than four years after the Supreme Court's final decision in Appeal of Smith, the DRB unilaterally scheduled and held what it termed a public "remand hearing." The Town Planner, in a letter dated November 15, 2010, described the remand hearing as having been "ordered by the Environmental Court's 2004 decision" and stated that the hearing would provide an opportunity for parties to present evidence "consistent with the Court's remand order." See Appellants' Mot. for Summ. J (filed July 18, 2010), Exhibit K, letter from Cathleen Gent, Town Planner, to John Collins, Club's attorney, Nov. 15, 2010; see also In re Remand Order Regarding Appeal of William Smith, #02-168, at 1 (Town of Richmond Dev. Review Bd. Feb. 25, 2011) ("The Town of Richmond [DRB] held a public hearing . . . pursuant to the Remand Order of the Vermont Environmental Court dated December 20, 2004, Docket No. 263-12-02").

According to both the Club and Appellants, and as represented in the decision ultimately issued by the DRB on February 25, 2011, the purpose of the remand hearing was primarily to determine whether the "current usage levels and uses at the [Club's] approximately 45-acre facility . . . [have or] have not materially expanded or increased, as compared to such uses on or before March 1969 when the Town of Richmond adopted its zoning regulations." In re Remand Order Regarding Appeal of William Smith, #02-168, at 1. The DRB concluded that the use of the Club's property as a private club had not changed since 1969, but that it could not reach a determination as to whether "the current usage levels and uses at the Fish & Game Club facility, including its shooting range, have materially expanded or increased." Id. at 3.

In their motion pending before this Court, Appellants argue that the DRB's actions were ultra vires because the DRB did not have an application before it allowing it to undertake such review and because this Court's 2004 Decision and Order, which was affirmed by the Vermont Supreme Court, also did not provide such authority. Rather, Appellants argue that the 2004 Decision and Order had conclusively answered the question addressed in the remand hearing, as it found that the Club's use had at least doubled. The Club argues that the 2004 Decision and Order left unresolved the question of whether the Club had increased its use level since 1969. The Club argues that the question was a necessary part of the review required under the former version of § 4.7 of the Zoning Regulations; that § 4.7, as it previously existed, did not require a party to submit an application in order for the DRB to review the questio; and that the Club's original 2002 zoning application was sufficient to allow the DRB to conduct its review.

In Vermont, municipalities and their development review boards have "only those powers and functions specifically authorized by the legislature, and such

5

additional functions as may be incident, subordinate or necessary to the exercise thereof." In re Petition of Ball Mountain Dam Hydroelectric Project, 154 Vt. 189, 192 (1990) (quoting Hinesburg Sand & Gravel Co. v. Town of Hinesburg, 135 Vt. 484, 486 (1977)). Additionally, a development review board can only provide the type of permit or relief that an applicant requests in an application, and cannot convert the proceeding to address another type of approval. See In re Torres, 154 Vt. 233, 236 (1990) (concluding that a municipal panel did not have the authority to issue a conditional use permit in proceeding on an application for a permitted use); see also 3 E. Ziegler, Rathkopf's Law of Zoning and Planning § 57:46 (4th ed. 2011) ("The [municipal] board of appeals has no power to grant relief of an entirely different kind from that applied for . . . .").

Most important for the resolution of the pending motion is the DRB's characterization of its proceedings. In its February 25, 2011 decision, the DRB did not identify any application from the Club (or appeal of a Zoning Administrator's decision) that it was considering. Rather, the DRB stated that it was holding a public hearing "pursuant to the Remand Order of the Vermont Environmental Court dated December 20, 2004, Docket No. 263-12-02." In re Remand Order Regarding Appeal of William Smith, #02-168, at 1 (Town of Richmond Dev. Review Bd. Feb. 25, 2011). Thus, the DRB appears to have viewed the Court's 2004 Decision and Order, rather than a pending application,[3] as authorizing it to engage in the hearing and review it undertook on its own, six years later.

The zoning enabling statute, 24 V.S.A. § 4460(e)(12), allows the DRB to engage

---

[3] To the extent that the DRB considered the Club's 2002 zoning permit application to be the subject of the DRB's 2011 proceedings, it was then no longer a pending application. As stated in this Court's 2004 Decision and Order, the Zoning Administrator approved the 2002 application and it became final when it was not appealed. Appeal of Smith, No. 263-12-02 Vtec, slip op. at 7. Thus, it is no longer pending nor can it be the subject of the current proceedings.

in a number of functions, including conducting any review "required by the [municipality's] bylaws." However, in the present case the DRB did not conduct its proceedings based on authority in its Zoning Regulations and the Court is unable to identify any section of the Regulations that could authorize the review the DRB undertook here, without receipt of a formal application. In fact, without receipt of an application from the Club, neither the DRB, the parties, nor the Court can determine what version of the Regulations is applicable.[4] This apparent lack of clarity as to the applicable version and section of the Regulations underscores the need for an application to be filed with the DRB in order for it to undertake review proceedings and issue a decision in the first place, as well as for the Court to undertake a de novo review of that DRB decision. The Court's review authority is limited to "whatever the [DRB] might have done with an application properly before it." Torres, 154 Vt. at 236.

Because the 2004 Decision and Order did not provide authority for the DRB to undertake a "remand hearing" without a pending application (or an appeal to it of a decision of the Zoning Administrator), the DRB's decision was ultra vires and must be vacated. The decision issued by the DRB was, at best, an advisory opinion possibly related to a potential future application from the Club, but the parties have not shown any provision of the Regulations authorizing the Richmond DRB to issue advisory opinions. See 3 E. Ziegler, Rathkopf's Law of Zoning and Planning § 57:9

---

[4] As a general rule, the version of the zoning regulations applicable to a municipal panel's review is that which is in effect on the date a proper application is submitted to the panel. See, e.g., In re Jolley, 2006 VT 132, ¶ 11, 181 Vt. 190 (citing Smith v. Winhall Planning Comm'n, 140 Vt. 178, 181–82 (1981)). Submission of an application gives an applicant vested rights to the zoning regulations present at that time. Id. The parties appear to disagree about what version of the Regulations applies. Appellants focus on a more recent version of the Regulations and the Club focuses on a version of the Regulations in existence during the adjudication of the previous appeal, Appeal of Smith.

(4th ed. 2011) ("Unless empowered to do so by the provisions of the zoning ordinance, the board of appeals may not render advisory opinions.").

Further, the hearings considered evidence on the scope and intensity of use of the shooting range as of and after the adoption of zoning in Richmond in 1969, even though this Court had issued findings and conclusions on those facts in its 2002 decision, which the Club had not contested at the Supreme Court, and even though the Supreme Court had upheld this Court's reversal of the contrary DRB decision in the first place.

Although the parties dispute whether the DRB had authority to examine the question of how the Club's property usage changed over time, that question is one of issue preclusion based on the 2004 Decision and Order. Although a court can raise the topic of issue preclusion <u>sua</u> <u>sponte</u> because the ability to do so avoids judicial waste and encourages reliance on previous decisions, see <u>Wetherby v. Vincent</u>, 2005-417 (Vt. Sept. term, 2006) (unpublished mem.); cf. <u>Merrilees v. State</u>, 159 Vt. 623, 623–24 (1992), in the present case it is unnecessary for determination of the present motion for summary judgment. In any event, it is impossible to determine from the DRB's decision for which time span it was examining the Club's property usage, compared to the dates examined by the Court in the previous appeal (1969 to 2003).

Accordingly, based on the foregoing, Appellants' motion for partial summary judgment is GRANTED and it is hereby ORDERED and ADJUDGED that the DRB's

8

2011 decision is VACATED, concluding this appeal.[5]

This decision does not order the Club to file an application and does not order Appellants to request any action from the Zoning Administrator; it remains up to the parties whether they wish to file anything at the municipal level. This decision does not in any way limit the DRB's authority to consider a duly filed application, or to consider an appropriate appeal from a decision of the Zoning Administrator.

Done at Berlin, Vermont, this 24th day of October, 2011.

_____
Merideth Wright
Environmental Judge

---

[5] On October 17, 2011, the Club also moved for a "stay of enforcement" of a provision of the DRB decision that required the discharge of firearms on the Club property to comply with the noise standards of the Zoning Regulations. Due to the Court's decision in this matter, that request is now MOOT.